**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| MICHELLE K. HOUSER, | ) | CASE NO. 5:21-CV-00369-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | MEMORANDUM ORDER AND |
| | ) | OPINION |
| Defendant, | ) | |

## I.     Introduction

Plaintiff, Michelle Houser, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 21). For the reasons set forth below, the Court AFFIRMS the Commissioner's final decision denying Houser DIB.

## II.    Procedural History

On June 26, 2019, Houser filed an application for DIB, alleging a disability onset date of July 1, 2018. (ECF No. 9, PageID #: 154–55). The application was denied initially and upon reconsideration, and Houser requested a hearing before an administrative law judge ("ALJ"). (ECF No. 9, PageID #: 188, 203). On June 12, 2020, an ALJ held a telephone hearing, during which Houser, represented by counsel, and an impartial vocational expert testified. (ECF No. 9, PageID #: 94). On July 22, 2020, the ALJ issued a written decision finding Houser was not

disabled. (ECF No. 9, PageID #: 76). The ALJ's decision became final on January 12, 2021,

when the Appeals Council declined further review. (ECF No. 9, PageID #: 62).

On February 16, 2021, Houser filed her Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 13, 16).

Houser asserts the following assignment of error:

> The ALJ erred at step four that Plaintiff has the residual functional
> capacity to perform light work with additional physical limitations.
> This finding lacks substantial evidence because the ALJ failed to
> consider the persuasiveness of Dr. J. Abdelmalak's opinion, failed
> to provide deference to Plaintiff's complaints and missed key
> objective physical exam notes. Therefore, the ALJ failed to build
> an accurate and logical bridge between the evidence and the result.

(ECF No. 10 at 1).

## III.    Background

### A.        Relevant Hearing Testimony

At the hearing, Houser testified as to the following. Houser has two young kids that she

takes care of. (ECF No. 9, PageID #: 103–04). One of her sons has autism and ADHD. (ECF

No. 9, PageID #: 124). Houser is his primary care giver, so she helps him with medication,

plays with him, and goes to therapy with him. (ECF No. 9, PageID #: 124–25). She also

helped her mother after a partial knee replacement by driving her to physical therapy,

cooking her meals, and changing her ice packs. (ECF No. 9, PageID #: 128). Houser drives

but not more than 30 minutes at a time. (ECF No. 9, PageID #: 103–04). She does not do any

household chores. (ECF No. 9, PageID #: 131). Houser and her husband take turns cooking

meals. (ECF No. 9, PageID #: 133). She sells jewelry online for fun. (ECF No. 9, PageID #:

105). She spends about five hours a month on this business. (ECF No. 9, PageID #: 106).

Houser left her previous marketing job due to increased pain and migraines and because she

wanted to spend more time with her children. (ECF No. 9, PageID #: 108).

As for her medical issues, Houser suffers from chronic pain that makes it hard to concentrate, sit, sleep, stand, walk, or really do anything. (ECF No. 9, PageID #: 113–14). She also gets migraines that are triggered by her pain. (ECF No. 9, PageID #: 114). She has been getting them since she was 13 but they have gotten worse. (ECF No. 9, PageID #: 114). She only feels better when she is lying down. (ECF No. 9, PageID #: 114). Most of her pain occurs in her pubic bone, spine, and hips. (ECF No. 9, PageID #: 115). She also feels pain in her neck and shoulders. (ECF No. 9, PageID #: 115). Houser has been attending physical therapy twice a week since 2018. (ECF No. 9, PageID #: 115). She also receives injections and nerve blocks. (ECF No. 9, PageID #: 116–17).

## B.        Relevant Medical Evidence

The ALJ summarized Claimant's health records and symptoms:

> The record reflects that the claimant had a history of several conditions predating the alleged onset date in July 2018, including migraines and lumbar disc degeneration (5F; 6F). In May, the claimant reported increasing low back pain going into her lower extremity that was worse with standing, walking, and bending (6F/92). She demonstrated mild back tenderness but normal gait and extremity function (6F/92). The following month, she demonstrated stable findings with normal sensation, strength, and reflexes (6F/86). She underwent sacroiliac, symphysis pubis, and pudendal neuralgia injections (6F/73, 80, 83).
>
> Thereafter, the claimant remained in physical therapy for improved pelvic floor function (6F/76). In August, she said she had increasing headaches and she received occipital nerve injections along with an increased dose of Topamax (6F/67-69). She also had ongoing sacroiliac injections (6F/65). While she had tenderness over the right hip, she demonstrated normal gait (6F/65).
>
> During the fall, the claimant had a right sacroiliac joint steroid injection for sacroiliitis (5F/44). Hip x-rays were essentially normal (6F/184). She demonstrated tenderness over her right sacroiliac joint and positive Patrick's sign, but normal gait (6F/51).

Additionally, the claimant developed a headache and tinnitus after her son hit her in the head (6F/43). She had normal mental status, coordination, and gait (6F/44).

The claimant had a December exam for chronic pain in her pelvis, back, and legs (6F/38). On exam, she had pain with palpation of the lumbar spine, but good motion, of the joints (6F/40). She said her pain was better with walking as opposed to standing (6F/40).

In early 2019, the claimant underwent right lumbar lateral branch bipolar radiofrequency neurotomy and symphysis pubis injection (5F/39, 73). She also had continued headaches for which she received trigger point injections in her cervical paraspinals and upper trapezius muscles (6F/36). The claimant noted lower back pain that had increased since the holidays(6F/33). She exhibited tenderness over her sacroiliac joints, but normal gait (6F/33). She continued taking Cymbalta, Diclofenac, and Zanaflex (6F/33).

During an April pain management exam, the claimant said her pelvic pain had resolved generally (6F/17). She had no neurological symptoms and no pain on palpation of her lumbar spine (6F/19). She demonstrated normal gait as well (6F/19). Although the claimant said she had frequent headaches, she had minimal migraines (6F/16). Her overall condition and treatment were stable through the spring with some increase in headaches (6F/9-12).

The claimant had a pain management visit in July, where she reported severe right hip pain (7F/14). She displayed tenderness on the right greater trochanteric bursa, but normal gait and no back pain (7F/16). Hip x-rays documented mild degenerative changes of the sacroiliac joints with preserved joint spaces (7F/21). She received a right greater trochanteric bursa injection, which provided 50% pain relief (7F/8, 10). In a physical therapy assessment, the claimant had decreased lumbar and hip motion and strength (16F/2). The following month, the claimant had right hip pain with flexion and internal rotation, although she maintained a normal gait (14F/8).

The claimant also complained of chronic headaches but they improved with nerve blocks, physical therapy, and trigger point injections (9F/4). She had two headache days per month (9F/4). She demonstrated normal mental status, strength, tone, coordination, and gait (9F/5).

In October, the claimant reported ongoing right hip pain going to

her knee, but the pain level was only 2/10 with good pain relief with physical therapy and medication (10F/8). On exam, the claimant had full back motion, negative straight leg raising, and normal gait (10F/8). The next month, she had tenderness of the right ischial tuberosity bursa, but normal motion and gait (13F/129). Despite back pain, she had full motion and no pain on palpation (13F/129). The claimant underwent right ischial tuberosity bursa injection (13F/150). Through the fall, her migraines remained under control (13F/138).

Into early 2020, the claimant remained in pain management and physical therapy for low back and hip pain (13F/209; 16F). She noted substantial relief with her bursa injections although her back pain increased with activity (13F/209). While she had tenderness over the bilateral lumbar paraspinal muscles and her SI joints along with positive Patrick's test on the right, she had normal gait (13F/209, 231). In addition to medication, she received SI joint injections (13F/247, 287). The claimant also complained of worsening headaches for which she received trigger point injections (13F/215, 218).

The claimant went to the emergency department in April for right hip and low back pain (15F/6). She said her son had jumped on her right hip recently, worsening her pain (15F/6). She demonstrated bilateral paraspinal and right hip tenderness (15F/8). The claimant was ambulating with a cane, but it was not clear that such aid was medically necessary (15F/9). X-rays showed no acute abnormality of the right hip or lumbar spine (15F/10). The claimant was discharged home with advice on conservative treatment measures and to follow-up with pain management (15F/10). The next month, she was limping but she walked without a cane (14F/59). She remained on several medications and she attended physical therapy (14F/59). Later in May, the claimant said she was feeling better in physical therapy and she was able to work in the garden and play with her kids (16F/24). She began attending pool exercise classes (16F/26).

(ECF No. 9, PageID #: 84–86).

## C.       Opinion Evidence at Issue

On October 28, 2019, Michelle Godek, Ph.D., AT and Jamie Hart, PT, AT, DPT, met with Houser per her treating physician's referral and completed a KEY Functional Whole Body Assessment. (ECF No. 9, PageID #: 784). The Assessment indicated that Houser's highest lifting

capability level reflected Sedentary work. (ECF No. 9, PageID #: 784). She could work 3 to 4 hours in a workday, sit for four hours in a day, stand 0 hours in a day, and walk 1 to 2 hours in a day. (ECF No. 9, PageID #: 784). She could not sit for more than 55 minutes at a time or stand for more than 5 minutes at a time. (ECF No. 9, PageID #: 784). It also stated that Houser could only "minimally occasional" balance, bend, stoop, crouch, or use her right foot. (ECF No. 9, PageID #: 784). The physical therapists emphasized that the objective data indicated that Houser was "demonstrating full effort." (ECF No. 9, PageID #: 784). Joseph Abdelmalak, M.D.—Houser's treating physician who had referred her to the physical therapists for the evaluation—signed the assessment summary and stated, "I have reviewed the reports and agreed with the findings." (ECF No. 9, PageID #: 784).

The ALJ found the assessment's conclusions "unpersuasive." (ECF No. 9, PageID #: 87). However, the ALJ did not mention that Dr. Abdelmalak signed onto the opinion.

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, trochanteric bursitis of the right hip, and migraine (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: She can frequently climb ramps or stairs, but can never climb ladders ropes, or scaffolds. She can frequently stoop, kneel, crouch, or crawl. She can work in a setting with no more than moderate noise. She must avoid all exposure to workplace hazards such as unprotected heights.

(ECF No. 9, PageID #: 81–83).

## V.      Law & Analysis

### A.        Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.        Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R.

§ 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C.        Discussion

Houser raises one issue on appeal. She asserts that the ALJ's RFC lacks substantial evidence. Within this issue there are three sub-arguments. First, Houser argues that the ALJ failed to consider the persuasiveness of Dr. Abdelmalak's opinion. Second, she suggests that the ALJ failed to provide deference to her complaints. Finally, she alleges that the ALJ missed key objective physical exam notes. Overall, Houser states that the ALJ failed to build an accurate and logical bridge between the evidence and the result. The Court will take each argument in turn.

### 1.        Dr. Abdelmalak's opinion

Houser argues that the ALJ erred by failing to name, consider, and determine the persuasiveness of Dr. Abdelmalak's opinion. At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical

opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c).

As noted above, Dr. Abdelmalak, Houser's treating physician, referred Houser to two physical therapists to conduct an FCE. The FCE concluded that Houser's highest lifting capability level reflected Sedentary work. (ECF No. 9, PageID #: 784). She could work 3 to 4 hours in a workday, sit for four hours in a day, stand 0 hours in a day, and walk 1 to 2 hours in a day. (ECF No. 9, PageID #: 784). She could not sit for more than 55 minutes at a time or stand for more than 5 minutes at a time. (ECF No. 9, PageID #: 784). It also stated that Houser could only "minimally occasional" balance, bend, stoop, crouch, or use her right foot. (ECF No. 9, PageID #: 784). Dr. Abdelmalak signed the assessment and stated, "I have reviewed the reports and agreed with the findings." (ECF No. 9, PageID #: 784). The ALJ did not acknowledge Dr. Abdelmalak's statement. Instead, he stated that the exam was done by the physical therapists and found that the assessment was not persuasive, reasoning that:

It was based on a one-time assessment of the claimant without consideration of the longitudinal view of her overall functioning. Moreover, the balance of the exams did not establish such significant limitations. Indeed, the treatment notes showed largely normal strength, gait, sensation, and motion despite ongoing back and hip pain. Additionally, with treatment, the claimant's pain and function improved overall. Such findings are incongruent with the degree of dysfunction that was described in the functional capacity evaluation.

(ECF No. 9, PageID #: 86–87). Houser argues that this was error because Dr. Abdelmalak's statement constituted his opinion and the ALJ was required to consider the persuasiveness of each opinion. The Commissioner argues that the statement was not an opinion, the ALJ did not err because she discussed the supportability and consistency of the actual assessment, and that any error was harmless.

As a preliminary matter, the Court concludes that Dr. Abdelmalak's statement constituted his opinion. "Courts within this Circuit have treated opinions co-signed by a physician as opinions of that physician." *Strickland v. Saul*, No. 1:18-CV-1664, 2019 WL 4141534, at *5 (N.D. Ohio Aug. 30, 2019) (citations omitted); *see also Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 553 (6th Cir. 2020). As such, the ALJ was required to, at a minimum, discuss the supportability and consistency of the opinion. It is undisputed that the ALJ did not explicitly discuss Dr. Abdelmalak's opinion. She did, however, discuss the supportability and consistency of the FCE. The Commissioner asserts that this is sufficient to avoid remand. The Court agrees.

A violation of the ALJ's duty to articulate her reasoning for finding an opinion not

persuasive is harmless error where the ALJ meets the goal of the regulations.[1] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citing *Wilson v. Comm'r of Sec. Sec.*, 378 F.3d 541, 547 (6th Cir. 2010). "The procedural protections at the heart of the [articulation rule] may be met when the 'supportability of a doctor's opinion, or its consistency with the other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments.'" *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2002)).

Although it is true that the ALJ failed to acknowledge Dr. Abdelmalak's opinion, the ALJ indirectly attacked it by attacking the FCE it was based on. The Court recognizes that the ALJ's statement that the FCE was based on a one-time assessment of Houser with no consideration of the longitudinal view of her overall function does not apply to Dr. Abdelmalak's opinion. However, the remaining reasons for finding the FCE not persuasive do apply. The ALJ stated that the balance of the exams did not establish such significant limitations. That would apply to both opinions and Houser does not dispute the accuracy of the statement. Moreover, the ALJ explained that the treatment notes showed largely normal strength, gait, sensation, and motion despite ongoing pain. Notably, in the ALJ's discussion of the medical record, the ALJ cited to Dr. Abdelmalak's treatment notes to demonstrate that Houser had normal motor strength (ECF No. 9, PageID #: 596), normal gait (ECF No. 9, PageID #: 596, 602), and normal reflexes (ECF No. 9, PageID #: 596). Thus, this is a specific finding that Dr. Abdelmalak's treatment notes did

---

[1] The Court recognizes that this "indirectly attack" exception applied to the treating physician rule that has since been replaced. However, like the treating physician rule, the current articulation requirement instructs the ALJ to discuss the supportability and consistency of the medical provider's opinion. The "heart" of the rule is therefore the same. Moreover, the treating physician rule was more stringent than the current articulation requirement. The Court, thus, concludes that this exception equally applies to the articulation requirement.

not support the opinion. Additionally, the ALJ stated that Houser's pain improved overall, and the opinion was incongruent with the degree of dysfunction described in the functional capacity evaluation. Each of these statements applies equally to Dr. Abdelmalak's opinion and renders any error harmless. *See Beaver v. Comm'r of Soc. Sec. Admin*., No. 4:16-CV-02883, 2017 WL 5513642, at *10–12 (N.D. Ohio Oct. 16, 2017) (concluding that the ALJ's failure to acknowledge that an opinion was cosigned by the claimant's treating physician was harmless error), *report and recommendation adopted sub nom. Beaver v. Comm'r of Soc. Sec.*, No. 4:16 CV 2883, 2017 WL 5495112 (N.D. Ohio Nov. 16, 2017).

Nonetheless, Houser points to records of her complaints of pain and evidence of tenderness and limited range of motion. She attempts to explain how Dr. Abdelmalak's opinion and the FCE are consistent with the medical record. However, this is insufficient for House to prevail on her claim. To be successful, a claimant must show that the ALJ's decision is not supported by substantial evidence. "[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). As discussed above, there is sufficient evidence in the medical record that supports the ALJ's conclusion that the FCE (and, therefore, Dr. Abdelmalak's opinion) was not supported by or consistent with the medical record. Houser's only argument to the contrary is that "the ALJ failed to provide deference to the fact that many of [Houser's] complaints stemmed from ongoing issues with activities exacerbating her pain and limitations and missed key physical examination findings beyond strength, gait, and sensation." (ECF No. 10 at 13). As will be discussed in more depth below, the ALJ was not required to defer to Houser's complaints.

Moreover, it is not the Court's job to reweigh the evidence. The ALJ concluded that the treatment notes did not support and were inconsistent with the FCE. The ALJ provided substantial evidence for that conclusion. Houser acknowledges that the ALJ's statements are accurate. (ECF No. 10 at 13 ("While some of Plaintiff's exams showed normal strength, gait and sensation. . . .")). That is sufficient to avoid remand.

Houser additionally argues that the fact that Dr. Abdelmalak was Houser's treating physician weighs in favor of finding the opinion persuasive. The Court acknowledges that this factor does weigh in favor of the opinion. Nonetheless, the ALJ concluded that the two most important factors—supportability and consistency—do not. *See* 20 C.F.R. § 404. 1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . ."). The fact that one less important factor weighed in favor of Dr. Abdelmalak's opinion does not change the outcome.

Accordingly, the Court concludes that the ALJ indirectly determined that Dr. Abdelmalak's opinion was not supported by or consistent with the evidence. The ALJ's conclusion was supported by substantial evidence. Although the ALJ should have explicitly made this determination, where an agency has failed to adhere to its own procedures, the Court "will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (citations omitted). Neither has occurred here. Any error, therefore, was harmless.

### 2. Houser's Subjective Allegations

Houser next argues that the ALJ failed to "provide deference to the fact that many of

Plaintiff's complaints stemmed from ongoing issues with activities exacerbating her pain." (ECF No. 10 at 13). Houser appears to suggest that the ALJ inappropriately dismissed her consistent allegations of pain. Houser misunderstands the ALJ's duty regarding subjective allegations of pain. In determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). However, the ALJ "is not required to accept a claimant's subjective complaints." *Id.* at 476 (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8. The ALJ "must clearly state [her] reasons" for discounting or rejecting a claimant's subjective complaints. *Harper v. Comm'r of Soc. Sec.*, No. 1:20-CV-1304, 2021 WL 2383833, at *11 (N.D. Ohio May 25, 2021) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)), *report and recommendation adopted*, No. 1:20-CV-1304, 2021 WL 2381906 (N.D. Ohio June 10, 2021).

Here, the ALJ appropriately stated why she concluded that Houser could work despite her allegations of pain. She explained:

> With respect to the claimant's alleged symptoms and limitations, the undersigned finds such assertions only partially consistent with the evidence. The record showed that the claimant had ongoing headaches along with back and hip pain. However, with physical

> therapy and periodic injections, her headaches were generally controlled with only periodic complaints. Additionally, while the claimant had persistent back and hip pain, the record showed improvement with a relatively conservative treatment course of injections, medication, and physical therapy. Although she occasionally used a cane, she generally demonstrated normal gait and there was no documented medical need for the ongoing use of a cane. Furthermore, the claimant demonstrated largely normal strength, negative straight leg raising, and intact neurological functioning. The record failed to confirm that the claimant did not perform chores "for years" as she testified. Rather, she was able to make trips to Florida and an amusement park, along with, cleaning, shopping, and caring [for] her child with autism and her mother following a surgery. Recent exams documented improving functioning, including the ability to garden and play with her children. Such facts are consistent with the finding that the claimant could perform the reduced range of light work described in the residual functional capacity.

(ECF No. 9, PageID #: 87).

The ALJ properly concluded that Houser's conservative treatment, improvement, daily activities, and the lack of objective medical evidence supporting her allegations all weighed against accepting Houser's allegations as true. These are appropriate reasons to rely on. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (instructing the ALJ to consider the effectiveness of any medications); *Dunn v. Comm'r of Soc. Sec.*, No. 1:15-cv-176, 2016 WL 4194131, at *9–10 (S.D. Ohio July 15, 2016) (considering effective treatment a sufficient reason to discredit the claimant's allegations of pain); *Minor v. Comm'r of Soc. Sec.*, No. 5:18 CV 2233, 2019 WL 6525601, at *29 (N.D. Ohio Dec. 4, 2019) ("Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ 'has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record.'" (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997))). Houser suggests that the only reason her pain was relieved and her functioning improved was because "she laid down, compliantly took her extensive medication, underwent several injections, and endured physical

therapy." (ECF No. 10 at 14–15).[2] However, this does not change the fact that Houser's pain and functioning improved. In fact, the ALJ is instructed to consider the effectiveness of Houser's treatment when evaluating her allegations of pain. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v). Accordingly, the Court concludes that it was appropriate that the ALJ did not "defer" to Houser's complaints and her argument to the contrary is without merit.

### 3.    The ALJ's Consideration of the Medical Evidence

Finally, Houser asserts that the ALJ "missed key physical examination findings beyond strength, gait, and sensation." (ECF No. 10 at 13). She asserts that the ALJ failed to acknowledge multiple exam findings of tenderness over her suprapubic with palpation, tenderness over her left pudendal with palpation, tenderness over her lumbar spine, pain reproduced with lumbar extension, tenderness over her right SIJ, positive Patrick's signs, and tenderness with palpation over her right hip. However—as the Commissioner correctly points out—an ALJ is not required "to discuss every piece of evidence in the record to substantiate [her] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *Jenkins v. Colvin*, No. 5:15-CV-1165, 2016 WL 825909, at *9 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to *consider* all of the evidence in the record, [s]he is not required to *discuss* each item of evidence in her opinion."

---

[2] Houser also conclusively states that the ALJ was required to include limitations in the RFC that "plaintiff would be off-task at work more than 15% of the time and would miss work at least two (2) times per month on an ongoing and consistent basis due to her severe impairments and treatment regimen." (ECF No. 10 at 15). Not only did Houser fail to provide support for this argument, but also there is not a single opinion in the record recommending such limitations. (ECF No. 9, PageID #: 165, 179, 784). Moreover, the ALJ thoroughly evaluated the medical evidence and explained her RFC determination. The Court, therefore, concludes that Houser has not met her burden of proof showing that the ALJ's decision is not supported by substantial evidence. *See Raymond R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-539, 2022 U.S. Dist. LEXIS 90406, *15 (S.D. Ohio May 19, 2022).

(citations omitted)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 WL 815625 (N.D. Ohio Mar. 1, 2016). Here, the ALJ sufficiently considered the record evidence and supported the RFC with substantial evidence. First, the ALJ noted that Houser experienced tenderness on her back, over the right hip and sacroiliac join, right greater trochanteric bursa, tenderness of the right ischial tuberosity bursa, bilateral lumbar paraspinal. The ALJ, therefore, discussed many references to tenderness despite missing a few. The ALJ also twice noted evidence of positive Patrick's signs. The fact that the ALJ did not discuss every single piece of medical evidence (which was sometimes repetitive) does not render the decision inaccurate. Second, Houser does not explain how the inclusion of this "missing" evidence would have changed the result. She attempts to argue that the examinations relate to Dr. Abdelmalak's opinion but failed to explain how. As discussed above, the ALJ properly explained why the FCE was not supported by or consistent with the medical record and supported her decision with substantial evidence. The decision equally applied to Dr. Abdelmalak's opinion and rendered the failure to explicitly discuss his opinion harmless. To the extent that Houser argues that the evidence of tenderness supported her subjective allegations of pain, as previously discussed, the ALJ appropriately explained and supported her decision to not fully accept Houser's allegations. These "missing" pieces of evidence do not erase the substantial evidence supporting the ALJ's decision. The Court will not reweigh the evidence.

Finally, the RFC is supported by substantial evidence. The ALJ thoroughly considered the medical record. The ALJ relied on findings of normal strength, normal gait, negative straight leg raises, and intact neurological function to support the RFC. The ALJ also relied on Houser's improvement with treatment and her daily activities which including caring for her children and taking trips. Although the ALJ failed to explicitly discuss Dr. Abdelmalak's opinion, she

indirectly attacked it by explaining the supportability and consistency of the FCE that it was based on. The ALJ appropriately explained why she did not accept Houser's subjective allegations and sufficiently provided a logical bridge that allowed the Court to meaningfully review her decision. Accordingly, the Court finds no reason to disturb the ALJ's decision.[3]

## VI.    Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Houser DIB.

IT IS SO ORDERED.

Dated: June 2, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

[3]  In her reply brief, for the first time, Houser argued that the ALJ inappropriately relied upon her own interpretations of the objective medical exams in forming her RFC. However, "it is well-established that new substantive issues cannot be raised in a reply brief." *Colvin v. Comm'r of Soc. Sec.*, No. 4:18CV1249-JRA, 2019 WL 4743624, at *4 (N.D. Ohio Sept. 30, 2019) (citations omitted). Thus, this argument was waived. *See id.*